PROTESTANT GUILD FOR HUMAN SERVICES, INC. *vs.* DEPUTY DIRECTOR OF THE DIVISION OF EMPLOYMENT AND TRAINING & another.[1] No. 03-P-441. December 7, 2004. *Employment Security,* Eligibility for benefits, Voluntary unemployment.

On February 18, 2000, Joseph Nazzaro resigned from his position as restraint coordinator at a private school for mentally challenged children run by the Protestant Guild for Human Services (PGHS). Nazzaro applied for and was awarded unemployment benefits by the Division of Employment and Training (DET) based on the finding of a DET review examiner, adopted by the DET board of review, that Nazzaro had left work voluntarily with good cause attributable to PGHS. See G. L. c. 151A, § 25(*e*)(1). PGHS appeals from a decision of the Waltham District Court affirming the board's decision.

The facts most pertinent to the DET's decision were that, three days before Nazzaro's resignation, on February 15, a student counseled by Nazzaro needed to be physically restrained by PGHS staff. Arriving in response to a call for assistance, Nazzaro appeared at the door of the classroom and viewed the restraint measures but was told not to enter because the situation was under control. Later that day a representative of the Office of Child Care Services (OCCS) telephoned, asking to talk to Nazzaro. The latter was unavailable at the time and was later told by Michael Banks, the school's program director, that Nazzaro need not bother returning the call. On February 16, Nazzaro

---

[1]Joseph A. Nazzaro.

learned second-hand that the same student had again been subjected to restraints, leaving Nazzaro again "out of the loop." In a separate February 16 incident, a classroom teacher asked Nazzaro to check a student who she suspected had soiled himself. Nazzaro led the student to a bathroom but the student fought against having his pants taken down. Nazzaro and the student returned to the classroom, where Nazzaro, according to the review examiner's findings, mentioned his lack of success to the teacher. Others later found that the student had in fact soiled himself and that the feces had hardened, requiring that the student be scrubbed clean. The teacher complained to Banks, claiming not to have been told that Nazzaro had not taken care of the matter.

On February 17, Nazzaro asked to meet with Banks. His purpose was to complain that restraints were being improperly applied by the staff, that he was being excluded from participation, and that the staff members applying the restraints had failed up to that point to file incident reports as they were required to do by OCCS regulations. Nazzaro was taken aback when Banks handed him a written reprimand for his failure the previous day to take care of the problem of the soiled student, Banks labeling Nazzaro's performance in that regard "unacceptable." Nazzaro felt doubly aggrieved because, under PGHS guidelines, a verbal warning normally precedes any written warning.

Upset by the perceived unfairness of the written warning, feeling that his work was not appreciated and was being ignored, and fearing the possibility of "trumped up" accusations, Nazzaro submitted his resignation on February 18 and applied soon thereafter for unemployment benefits.

The review examiner concluded that Nazzaro left for good cause attributable to PGHS. Her basis for so concluding was heavily influenced by her finding that the reprimand on February 17 was in retaliation for Nazzaro's having called OCCS on February 15 to report the incident of what Nazzaro regarded as excessive use of restraints. The finding that Nazzaro had called OCCS on February 15 was based on a letter Nazzaro sent to OCCS on February 26 that stated: "[On] February 15 you [i.e., OCCS] telephoned to speak to me, but I was unable to take the call and I was later told by [Banks] that I need not bother."

The finding that Nazzaro had called OCCS February 15 was speculation. The direct evidence bearing on the timing of Nazzaro's complaint to OCCS and Banks's first learning that Nazzaro was concerned about the excessive restraints on February 15 and 16 contradicted the finding of retaliation. Nazzaro's own testimony was that he did not mention his concern about excessive restraints to Banks until the February 17 meeting, nor to OCCS until February 26, one week after he had resigned. Banks's testimony confirmed that he was unaware of Nazzaro's restraint concerns until the February 17 meeting. Because the letter of reprimand had been written before the February 17 meeting, the finding that it was written as retaliation was unsupported by substantial evidence and cannot stand. Compare *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434, 436 (1978); *Boston Mut. Life Ins. Co.* v. *Director of the Div. of Employment Security*, 384 Mass. 807, 807 (1981). The retaliation finding was not peripheral to the review examiner's ultimate conclusion that Nazzaro left work voluntarily with good cause attributable to PGHS; and while the other findings might have supported the review examiner's ultimate conclusion, we cannot know whether she would have drawn that conclusion without the finding of retaliation. Compare *Goodridge, supra* at 438.

Accordingly, the judgment of the District Court must be vacated and a new judgment shall enter reversing the decision of the board and remanding the matter to the DET for further proceedings consistent with this opinion.

*So ordered.*

*Joshua M. Davis* (*Kurt W. Hague* with him) for the plaintiff.

*Aileen S. Lomish* for Deputy Director of the Division of Employment and Training.

*John A. Yannis* for Joseph A. Nazzaro.